**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **COURTNEY JENKINS** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **DOUGLAS HOFMANN** | ) | **Case No. 1:06cv-3447-WDQ** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARTHA O'BRIEN, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; CROSS MOTION-FOR SUMMARY JUDGMENT AND DISMISSAL**

**DEFENDANTS' STATEMENT OF GENUINE ISSUES RESPONSIVE TO PLAINTIFFS' UNDISPUTED FACTS IN SUPPORT OF OPPOSITION; DEFENDANTS' UNDISPUTED FACTS FOR SUMMARY JUDGMENT**

**SUPPORTING DECLARATIONS OF MARTHA O'BRIEN, ROBERT J. LAUSON, PENELOPE K. CHAMBERS, BRIGETTE WATERBURY, ROBERT DANSBY, GLORIA NORTON AND RICHARD J. CASEY**

## I. Introduction

Defendants hereby oppose Plaintiffs' motion for summary judgment filed December 27, 2007 as lacking in merit in that genuine factual issues remain and Plaintiffs are not entitled to the summary adjudications as to liability they are seeking, and their motion was *untimely* and the Court in its discretion should decline to consider their papers or enter any summary adjudication order in favor of Plaintiffs. Further, given the

discovery dispute still unresolved, Defendants move for a continuance until the information and documents being sought is obtained and can be presented to the Court.

Still further, Defendants *cross-move* for summary adjudication on the right of publicity and copyright claims in that Plaintiff Jenkins cannot prove any injury-in-fact and the copyright registration upon which the action is based is invalid, and for *dismissal* based on Plaintiff's fraud on the Copyright Office and litigation misconduct and because this Court now lacks subject matter jurisdiction.

Defendants' opposition and cross-motions are based on this memorandum, the statements of genuine issues supporting the opposition and the undisputed facts supporting the cross-motion for summary adjudications and dismissal, and the Declarations of Martha O'Brien, Robert J. Lauson, Penelope K. Chambers, Brigette Waterbury, Robert Dansby, Gloria Norton and Richard J. Casey, all concurrently filed herewith, Defendants' motion to compel discovery from Plaintiffs filed November 30, 2007, all others documents on file and such other evidence the Court may consider.

## II. Factual Background And Procedural History

### A. O'Brien Learns Of Young's Suspected Fraud

In late 2006 the Defendant Martha O'Brien first became aware that third-party Aaron Young's galleries were selling unauthorized copies of giclee prints of her deceased husband (acclaimed artist John P. O'Brien) with forged signatures. OBrien Decl., para. 2. Ms. O'Brien demanded certain basic information from Mr. Young (Mr. O'Brien's former

agent) but Young refused to cooperate while at the same time promising a very aggressive response if Ms. O'Brien chose to pursue any legal claim against him. Id. Since Ms. O'Brien was being harmed in the marketplace by unauthorized reproductions and questions about the authenticity of O'Brien works, she filed suit in the Central District of California against Mr. Young and his businesses. Id. at para. 4.

### B. Third-Party Young's Failed Motion Practice

Young responded by engaging the large Venable law firm and joining with Plaintiffs in suing Ms. O'Brien here *in Maryland* for purposes of harassment, and at the same time moving to dismiss the California action based on lack of personal jurisdiction. Id. The California Court denied Young's motion to dismiss finding he had sufficient contacts with California to be sued there. Id.

After Young's attorneys had allowed Defendants extra time to answer only to take it back, their frivolous motion for a default in Maryland was denied. Id. at para. 5. The Maryland Court next granted Ms. O'Brien's motion to dismiss the claims brought by Young (as compulsory counterclaims that should have been brought in California). Id. Young's legal team's frivolous motion for a restraining order against Defendants (after Ms. O'Brien had written a letter to each of the Plaintiffs) was also denied by this Court as lacking merit. Id. at para. 6. Recently Plaintiff's attorney refused to insert Defendants' input into the joint status report and unilaterally filed their own report forcing Defendants to unilaterally file as well.

///

///

## C. Plaintiffs' Right of Publicity, Conversion and Copyright Infringement Claims

What remains in Maryland after dismissal of Young's Counts I – III are Plaintiffs' Hofmann's and Jenkins' claims for trover and conversion, breach of right of publicity and copyright infringement (which each amount to nothing monetarily), being pursued by Plaintiffs' attorneys with their fees being paid by third-party Mr. Young.

Plaintiffs complaint alleges that O'Brien's deceased husband stole a photograph of a group of young ballerinas from Young's office, and than made an unauthorized copy and displayed the copy on the O'Brien website for a time thereby violating Plaintiff Hofmann's copyright, and in so doing also violated Jenkins right of publicity as she appears in the approx. ten (10)-year-old photograph. In reality, the photograph was *given* to John O'Brien by Young who was Hofmann's agent, with *implied permission* to use the photograph and Young having *apparent authority* from Hofmann, and Hofmann having Jenkins' permission to take and use the photograph. Id. at para. 11.

Additionally, as shown and argued herein, the facts indicate the copyright registration, upon which Plaintiffs' infringement claim is based and which is needed to give this Court subject matter jurisdiction, is invalid. O'Brien Decl., paras. 18 – 20, Exs. C, D. Accordingly, it appears Hoffman and Jenkins have no valid claim against Ms. O'Brien and the entire action should be dismissed.

To argue that there are no factual issues, Plaintiffs' attorney asserts Martha O'Brien's inaccurate recollection of the timing of the meeting in Young's Office (whether it was approx. 10 or 15 years ago) when Young gave John O'Brien the

photograph somehow mean the meeting must have never occurred. See, Plaintiffs' Mov. Mem. at pp. 6-7. Such is not a viable basis for any judgment as a matter of law. Instead, should a trial be held, the jury may chose to believe Ms. O'Brien about the meeting in Young's office, which apparently occurred in about 1994 - 1998 rather than 1991 or 1992 as she mistakenly testified in her deposition in late 2007. O'Brien Decl., paras. 11 - 13. Further, although unfortunately John O'Brien is not alive to testify, many witnesses are prepared to testify as to him being an honest and extremely honorable man who would never have stolen a photograph. See, O'Brien Decl., para. 10; Chambers Decl., Waterbury Decl., Dansby Decl., Norton Decl. and Casey Decl..

Defendants are hopeful a trial need not be held. Plaintiffs have not been damaged in any way and Defendants have not profited. O'Brien Decl., para 14. John O'Brien painted the image in the photograph, and one copy was made that was displayed on the website (with very minimal traffic) for a time and donated to a ballet school for a time (that copy has since been recalled from the ballet school and is no longer displayed on the website). Id. Defendants have made no sales and no money off use of the image. Id. Similarly, Plaintiffs' have not been harmed in any recognizable way. Defendants are willing to return the photograph as to Plaintiffs' trover and conversion claim. Id. at para. 15. Even if Plaintiffs' have met their burden in any way, as argued below this Court, in its discretion, should nevertheless deny their motion.

///

///

### D. Young's Efforts To Thwart O'Brien's California Claims

Young insists to resolve this Maryland action, which is nothing more than harassment since there are no real monies at stake, that the California claims against him must be also dismissed. Discovery just commenced in the California on January 8, 2008, and thus O'Brien is unable to settle until requested information and documents are received from Young. Keeping these cases going in the meantime has been and is an extreme financial hardship for Ms. O'Brien. Id. at para. 8. O'Brien, her husband having passed away from Melanoma cancer in October, 2004, is a widow with two small children and living on her own on minimal earnings as a ballet teacher, loans from relatives, and sales of her late husband's artwork. Id. at paras. 3, 8.

Another part of the harassment is that Young is believed behind attorneys in England who have been sending Ms. O'Brien letters on behalf of Hofmann and threatening to sue her in the U.K., such correspondence listing Young as recipient of copies. Id. at para. 7, Ex. A. Young also engaged Jack Appleman (of Applejack) to contact Ms. O'Brien several times in efforts to scare her off. Id., para. 8, Ex. B. Further exasperating O'Brien's financial problems is that, since the California action began, Young (as John O'Brien's former agent) is wrongfully and unlawfully withholding licensing revenues (to date, approx. $7,000) he has received from Applejack Company which sells prints of the O'Brien works. Id.

### E. Defendants' Discovery Motion Remains Pending

Certain discovery from Plaintiffs remains long outstanding. Among the *verified* information and documents Defendants have been seeking for several months are specific

facts as to how Plaintiff Jenkins has been damaged, identification of the other women in the photograph, identification of any other images from which she has received revenue the past 10 years (she is supposedly a model), and various documents including photos of Jenkins so Defendants can identify if she is even the person in the photographs. Lauson Decl., para. 2. Similar discovery remain outstanding from Plaintiff Hofmann. See, Defendants' Motion To Compel filed Nov. 30, 2007, the content of which is incorporated by reference.

Interestingly, Defendants' information is that the photograph at issue is the first one Hofmann has ever attempted to register the copyright. Of course, this photograph, although apparently missing since 1998, was never missed by Hofmann, Jenkins or Young until Young needed a way to sue Ms. O'Brien in Maryland in late 2006.

Other discovery Defendants are seeking is documents as to Plaintiffs' communications with third-party Young, that go to their true motivations in bringing the lawsuit and lack of credibility of their allegations that they have experienced any actual damages or were harmed in any way. Lauson Decl., para. 3. Thus far Plaintiff's attorney refuses to provide any such discovery and Plaintiff's motion to compel is pending with a January 31, 2008 Noon hearing scheduled with Magistrate Judge Gauvey. Accordingly, Defendants lack essential discovery to enable a complete opposition to the instant motion. See, Lauson Decl., paras. 2 – 4.

Additionally, Ms. O'Brien also does not recall ever sending a photograph of the painted image to Louis Schultz and questions Plaintiff's evidence not disclosed until near

the end of discovery. O'Brien Decl., para. 16. The painting at issue is also missing; O'Brien believes Young may have it which would explain how Schultz received a photograph of it on an easel. Id. at para. 17. Plaintiffs have yet to produce the original of said photograph for inspection.

## III. Applicable Law

Because summary judgment is a "drastic device" cutting off a party's right to present evidence to a jury, the moving party bears a heavy burden of demonstrating absence of any triable issue of material fact. Nationwide Life Ins. Co. v. Bankers Leasing Ass'n Inc. 182 F.3d 157, 160 (2d Cir. 1999). While Defendants opposing evidence must be sufficiently probative to permit a reasonable trier of fact to find in favor of the opposing party, any inferences drawn from the evidence must be viewed in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. at 249-250, 106 S. Ct. at 2512; Eastman Kodak Co. v. Image Technical Services Inc. 504 U.S. 451, 456, 112 S. Ct. 2072, 2077 (1992).

Also noteworthy is that despite the mandatory language of Rule 56(c) that the Court "shall" grant summary judgment when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law, there is long-established doctrine holding that a Court may deny summary judgment if it believes further pre-trial activity or a trial will sharpen the facts and law at issue and lead to a more accurate or just decision. Kennedy v. Silas Mason Co. 334 U.S. 249, 256, 68 S. Ct. 1031, 1034 (1948); Westmoreland v. CBS 596 F. Supp. 1170, 1178 (S.D. N.Y. 1984); John Blair &

Co. v. Walton 47 F.R.D. 196, 197 (D. Del. 1969); Marcus v. St. Paul Fire & Marine Ins. Co. 651 F.2d 379, 282 (5th Cir. 1981); Hoover v. Holston Valley Comm. Hospital 545 F. Supp. 8, 11 (E.D. Tenn. 1981); Harris v. Tomczak 94 F.R.D. 687, 707-708 (E.D. Cal. 1992).

The law cited in Plaintiff's opening brief equally applies to Defendants' cross motions for summary judgment. That is, if Defendants can establish no material facts are at issue and entitlement to judgment as a matter of law as to the right of publicity and copyright claims, then partial summary judgment as to those claims is appropriate. Fed. R. Civ. P. 56 and associated case law.

## IV. O'Brien Was Given Implied Permission To Use The Photograph From Young Who Had Apparent Authority To Do So As Hofmann's Agent

Ms. O'Brien in her deposition and the attached declaration testified as to her attendance at a meeting in agent Young's office in Baltimore with her artist husband, and Young giving to John P. O'Brien a photograph and knowing it was a type of image he wanted to paint. See Plaintiffs' moving papers Ex. A; O'Brien Decl. at paras. 11 - 13. Ms. O'Brien was under the impression the photograph came from a box of rejects, and it was given without restriction. O'Brien Dep. TR; O'Brien Decl. at para. 11. The O'Briens knew it was a photograph taken by Hofmann who was also being represented by Young. O'Brien Dep. TR; O'Brien Decl. at para. 11. Young and John O'Brien had been friends and business associates for many years and operated informally, generally without written agreements. O'Brien Dep. TR; O'Brien Decl. at para. 12.

Plaintiffs' undisputed facts nos. 22 – 27 miss the point, in saying "no *written* license was granted to John O'Brien . . ." and he never *"explicitly* requested or received permission . . ." (emphasis added). They had a long relationship based on mutual respect and handshakes, meaning such formalities would have been atypical. O'Brien Decl., para. 12. The copyright law does not require licenses of copyrights to be in writing and such licenses may even be implied from conduct. Lulirama Ltd. Inc. v. Axcess Broadcast Services Inc. 128 F.3d 872, 879 (5th Cir. 1997); Effects Assoc. Inc. v. Cohen 908 F.2d 555, 558 (9th Cir. 1990), cert. denied 498 U.S. 1103 (1991); Data Gen. Corp. v. Grumman Sys. Support Corp. 36 F.3d 1147, 1167 n. 35 (1st Cir. 1994); Gracen v. Bradford Exch. 698 F.2d 300 (7th Cir. 1983). When the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license. Johnson v. Jones 885 F.Supp. 1008, 1013 (E.D. Mich 1995); Lulirama Ltd. Inc., supra.

Martha O'Brien claims she was at a meeting with Aaron Young in which the alleged stolen photograph was given to her husband. O'Brien Decl. at paras. 11 – 13. Apparently Young does not recall the meeting as the subject is unaddressed in his affidavit. At trial, it may come down to an evaluation of credibility to be made by the jury, as to whether they believe Ms. O'Brien or Mr. Young. Such a historical factual determination is not appropriate for the summary adjudication being sought by Plaintiffs.

## V. Jenkins' Gave Permission To Hofmann To Use Her Image Which Was Subsequently Given To O'Brien By Hofmann's Agent Young

It is undisputed that Jenkins gave Hofmann permission to use her image and likeness. See, Plaintiffs' Responses to Defendants Requests for Admissions Nos. 1

(Lauson Decl., Exs. A, B). Further, it is undisputed that Young was Hofmann's agent, a fact known to the O'Briens. See, Hofmann Aff. at para. 6, Young Aff. at para. 4; O'Brien Decl. at para. 11.

Neither Young nor Hofmann in their affidavits state whether Young had actual authority to grant O'Brien a license to use the photographs. If so, Young's acts in giving the photograph to John O'Brien with an implied license to use it bind the principal Hofmann. Rest. 3d Agency Secs. 2.01, 2.02. If Young lacked authority, he may be liable to the O'Briens for any action Hofmann has against the O'Briens. Id. at Sec. 6.10. It also appeared to Ms. O'Brien that Young had such authority, and the O'Briens reasonably relied on such apparent authority, hence Hofmann was bound by Young's implied license. O'Brien Decl., para. 11; Rest. 3d Agency Sec. 6.11. Such agency relationships are common between artist and gallery owners; indeed, Young was O'Brien's agent at the time with authority to bind O'Brien as to sales of his artwork. O'Brien Decl. at para. 11.

## VI. Plaintiff's Copyright Registration Was Obtained By Fraud And Is Invalid

It is undisputed that Defendants have the photograph as it was never returned to Plaintiffs. See, Plaintiffs' Undisputed Fact No. 21. It is also undisputed that the image that was registered, despite being identified as a photograph was actually a copy of the image of the painting from Defendants' website and does not match the photograph. O'Brien Decl., paras. 18 - 19, Exs., C, D. This does matter as there are material differences between the photograph and the image, including two (2) of the seven (7)

persons in the photograph left out of the painting. O'Brien Decl. at paras. 18 – 20, Exs. C, D.

Accordingly, it is undisputed that in applying to register the copyright in the photograph Plaintiffs' attorneys did not have the photograph, so instead it appears they fraudulently submitted an image that was not the photograph and in so doing knowingly presented false information to the U.S. Copyright Office in saying the image was a photograph and the one they had created. Plaintiffs did this so they could immediately bring an action in federal court in Maryland in an attempt to counter Ms. O'Brien's California action, as part of the aggressive counterattack they had promised.

In order to sue for copyright infringement, the work must be registered. In Dodd v. Fort Smith Special School Dist. No. 100, 666 F. Supp. 1278, 1282 (W.D. Ark. 1987)(Court refused to carve an exception to the registration requirement when the failure to register stemmed from Defendant's retention of the only copy of Plaintiff's manuscript; case granted Plaintiff relief on another basis).

If a copyright claimant willfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid. Russ Berrie & Co. v. Jerry Elsner Co. 482 F. Supp. 980 (S.D. N.Y. 1980); Masquerade Novelty Inc. v. Unique Indus. Inc. 912 F.2d 663, 667 (3d Cir. 1990); Service & Training Co. Inc. v. Data Gen. Corp. 963 F.2d 680, 688-689 (4th Cir. 1992); Ross Prods. Inc. v. NY Merch. Co. 233 F. Supp. 260 (S.D. N.Y. 1964), 242 F. Supp. 878 (S.D. N.Y. 1965); Donald Frederick Evans & Assoc. v. Continental Homes, Inc. 785 F.2d

897 (11th Cir. 1986); Eckes v. Card Prices Update 736 F.2d 959 (2d Cir. 1984); Miday Mfg. Co. v. Bandai America Inc. 546 F. Supp. 125 (D N.J. 1982).

The Copyright Office would not have registered a photograph if it knew the deposit material being presented was not a best copy of the photograph but instead an image of a painting that had been made derived from portions of the photograph. Therefore, the copyright registration is invalid and should be so declared by this Court, and Plaintiffs' copyright infringement claim should fail with prejudice.

Additionally, any person who knowingly makes a false statement of a material fact in the application for copyright registration has committed a crime defined by the Copyright Act. 17 U.S.C. Sec. 506(e). It appears Plaintiffs' attorney who signed and submitted the fraudulent copyright application has committed such crime, punishable by a fine of up to $2500, and further said criminal violation should be reported to the state bar of Maryland. Additionally, if this case goes to trial this presents a problem in that Plaintiffs' lead counsel (who signed the copyright application) will need to be called as a witness to testify by Defendants.

Still further, without the copyright federal claim, this Court certainly lacks diversity jurisdiction to go on with this case given that it is clear far less than $75,000 is at stake between the residents of different states. In view of Plaintiffs' litigation misconduct in instituting this federal action for which there was no basis, dismissal with prejudice and substantial sanctions are appropriate.

## VII. Any Copyright Violation By Defendants Was *De Minimis*

The legal doctrine of de minimis non curat lex, "the law does not care about trivial things," provides a defense against copyright infringement of very small proportions. When the Plaintiff establishes only a technical violation or trivial use of the copyrighted work by the Defendant, the law will not impose legal consequences. Gordon v. Nextel Communications 345 F.3d 922 (6th Cir. 2004)(brief use of copyrighted picture not infringement); Ringgold v. Black Ent. TV Inc. 126 F.3d 70 (2d Cir. 1997)(fleeting use of copyrighted material di minimis); Sandoval v. New Line Cinema Corp. 147 F.3d 215, 216-217 (2d Cir 1998)(no actionable infringement from use of photographs for 35.6 seconds in motion picture); Amsinck v. Columbia Pictures Inc. 862 F.Supp. 1044, 1047 (S.D. N.Y. 1994)(fleeting displays in motion picture di minimis); Knickerbacker Toy Co. v. Azrak-Harmway Int'l Inc. 668 F.2d 699, 703 (2d Cir. 1982)(relief denied for copy made for use in advertising material but not so used; another example posited by Judge Leval is a copy of a New Yorker cartoon posted on a refrigerator).

The facts here are similar in that John O'Brien made some personal use of the photograph in making a painting for his wife for her birthday, and one copy was briefly displayed on a website and at a ballet school. O'Brien Decl. at para. 14. As the Court in Davis v. The Gap 246 F.3d 1267 (11th Cir. 2001) noted, the de minimis doctrine, though not often invoked, is an important aspect of copyright law. It keeps us from being scofflaws. "Trivial copying is a significant part of modern life. Most honest citizens in the modern world frequently engage, without hesitation, in trivial copying . . .. When we do such things, it is not that we are breaking the law but unlikely to be sued. Because of

the de miminis doctrine, in trivial instances of copying, we are in fact not breaking the law" 246 F.3d at 173.

## VIII. O'Brien Did Not Steal The Photograph

There is clearly a factual dispute as to Plaintiffs' allegations that John O'Brien took the photograph without authorization from Young's office. All Young can say is that O'Brien had access to his office and "[a]lthough unbeknownst at the time ["lawyer speak" to avoid any statute of limitations problem], I *believe* that he took a photograph from my desk . . ." (emphasis added). Young Aff. at paras. 6-9. Young has nothing to say as to whether Ms. O'Brien and her husband and himself had any meeting in the 1990s as Ms. O'Brien recalls. O'Brien Decl. at para. 11. Other declarants all knew him as an honest and extremely honorable man with great integrity, who they believe would not have stolen a photograph. Decls. O'Brein (para. 10), Chambers, Waterbury, Dansby, Norton and Casey. Obviously this is a factual dispute, one involving credibility of witnesses, for the jury to sort out if this case proceeds to trial.

## IX. Jenkins' Right Of Publicity Claim Must Fail As She Cannot Prove Any Injury-In-Fact

Proof of injury-in-fact is a required element of the right of publicity tort. Amazon Inc. v. Cannondale Corp. 2006 U.S. Dist. LEXIS 13406, 2006 WL 650682 (D. Colo. 2006)(Court dismissed claim because Amazon could not prove damages)(Lauson Decl., Ex. D) Plaintiff bears the burden of proving an actual injury (and causation). Id. See

also, Moskin, "Downhill Rode For Right Of Publicity," June, 2006 (Lauson Decl., Ex. E).

Here Plaintiff Jenkins' entire evidence presented as to injury-in-fact is the conclusion: "I have been significantly and irreparably harmed by the ongoing intrusion upon my seclusion and misappropriation of my image and likeness." See, Jenkins Aff. at para. 9. There are no facts whatsoever to substantiate this claim. Upon information and belief, no such facts exist and the conclusion stated is false.

Jenkins interrogatory response to how she has been damaged similarly was only similarly conclusory and lacked any supporting facts:

**Interrogatory No. 1**: Please explain in detail all ways in which you have been damaged, how much you have been damaged monetarily and all materials facts which support your claim for damages in Court V of the complaint.

**Answer to Interrogatory No.1**:

Jenkins objects to the extent that this interrogatory is premature, because discovery has just begun. Jenkins objects to the extent that the information sought by this Interrogatory is in the possession of the Defendants.

Subject to and without waving the foregoing general and specific objections, Plaintiff Jenkins has been damaged to the extent that her image and likeness has been inappropriately used by the Defendants for the purpose of creating a profit. Defendants have utilized an unauthorized image of Jenkins for commercial gain, and intruded upon her seclusion solitude to her detriment.

Lauson Decl., Ex. C.

Telling of how Jenkins has not been damaged in any way is her sworn response that, to her knowledge, in addition to herself only Young and Hofmann saw her image on Defendants' website:

**Interrogatory No. 9**: Please identify all persons You know of who saw Your image on Defendants' website.

**Answer to Interrogatory No. 9**:

Jenkins objects to the extent that this interrogatory is premature, because discovery has just begun. Jenkins objects to the extent that the information sought by this interrogatory is in the possession of the Defendants. Jenkins objects to the extent this interrogatory calls for guessing and speculation, as the term "saw" is undefined.

Subject to and without waving the foregoing general and specific objections, it is Jenkins' understanding that Aaron Young, Doug Hofmann saw her image on Defendants' website.

Lauson Decl., Ex. C.

For Jenkins' irreparable harm, all she could point to was a Ms. O'Brien's polite letter sent her, which she labeled as threatening:

**Interrogatory No. 12**: Please identify in detail any threatening irreparable harm to you Defendants' presently.

**Answer to Interrogatory No. 12**:

Jenkins objects to the extent that this interrogatory is premature, because discovery has just begun. Jenkins objects to the extent that the information sought by this interrogatory is in the possession of Defendants. Jenkins objects to the extent this Interrogatory calls for guessing and speculation, as the term "threatening" and "Irreparable" are undefined.

Subject to and without waving the foregoing general and specific objections, Jenkins has produced a threatening and intimidating letter recently sent to her by defendant Martha O'Brien.

Lauson Decl., Ex. C.

Recall this Court may have already reviewed that letter as part of O'Brien's opposition to Plaintiffs' frivolous motion for a restraining order which this Court found lacked merit.

Jenkins has no injury-in-fact; her right-of-publicity cause of action must fail. Amazon Inc. v. Cannondale Corp. 2006 U.S. Dist. LEXIS 13406, 2006 WL 650682 (D. Colo. 2006)(Lauson Decl., Exs. D, E).

///

///

## X. This Court In Its Discretion Should Deny The Motion Even If It Appears Plaintiffs Have Satisfied Any Part Of Their Burden In Making The Motion

Plaintiffs' complaint and the work of their expensive attorneys in pursuing a lawsuit, with essentially no damages, just doesn't pass the smell test. It doesn't seem right and the Court besides following the law is charged with dispensing justice. Whether to grant any summary adjudication motion is always discretionary. Anderson v. Liberty Lobby 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-2514 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.")

Here there will need to be a trial anyway for a jury to fix the amount of nominal damages if Defendants are found liable. The Court in its discretion should defer any summary adjudication in Plaintiffs' favor.

## XI. If This Court Is Inclined To Grant Any Summary Adjudication For Plaintiffs, Given The Unresolved Discovery Disputes Defendants' Request a Continuance

As outlined above, Defendants lack certain essential, long outstanding discovery from Plaintiffs. See, Defs.' Motion to Compel Filed Nov. 30, 2007; Lauson Decl , paras. 2 - 4. Pursuant to Rule 56(f), Defendants request a continuance to obtain the further discovery, assess the need for follow-up discovery, and analyze the information and documents received and present the same to the Court. Gonzales v. K-Mart 940 F. Supp. 429, 431 (D. P.R. 1996)(Courts should generally grant Rule 56(f) requests unless party has been dilatory in conducting discovery or is attempting to delay case).

## XII. Conclusion

For all the forgoing reason, Plaintiffs' motion for summary adjudication of liability on all causes of action should be DENIED in its entirety, and Defendants' cross-motion for partial summary judgment with respect to the right of publicity and copyright claim be GRANTED, and the entire action should be dismissed based on the criminal fraud on the Copyright Office and litigation misconduct and this Court now lacking subject matter jurisdiction. If the Court is in any way inclined to grant any portion of the summary adjudications Plaintiffs are seeking, Defendants' request a continuance pending resolution of their pending motion to compel and the opportunity to complete discovery and supplement this opposition.

Further, as argued above, Defendants request in the interests of justice that any relief before trial for Plaintiffs be denied. This is an unusual case in which a third-party agent has orchestrated a lawsuit pitting one of his clients against another, paying the fees for one side, and Mr. Young has further organized a conspiracy among others (Hofmann's U.K attorneys, Applejack Art Partners, etc.) in a misguided attempt to intimidate Defendant Ms. O'Brien. If any relief may be granted to Plaintiffs, Defendants' California attorney requests a hearing and the opportunity to argue *via telephone (given Defendants' very limited means financially).*

Importantly, assuming Defendants prevail on the cross motions for summary adjudication or to dismiss, they seek reimbursement of their attorneys' fees under the copyright claim and their costs in defending this action and such other relief as the Court

deems just and equitable. Considering the circumstances of this case, such a fee and cost award should be levied against Plaintiffs' attorney Joshua Kaufmann personally and the Venable firm, and if possible against third-party Young, in addition to Plaintiffs.

Respectfully submitted,

/s/

Robert J. Lauson, Esq.
**Lauson & Schewe LLP**
1600 Rosecrans Avenue, 4th Floor
Manhattan Beach, CA 90266

Jill D. Caravaggio, Esq.
**Law Office of Jill D. Caravaggio**
200-A Monroe Street
Suite 115
Rockville, Maryland 20850

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January, 2008, **DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; CROSS MOTION-FOR PARTIAL SUMMARY JUDGMENT** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following::

Joshua J. Kaufman
Craig A. Thompson
**VENABLE LLP**
2 Hopkins Plaza
Suite 1800
Baltimore, Maryland 21201
(410) 244-7605

/s/
Robert J. Lauson